FILED
U.S. DISTRICT       RT
DISTRICT            S

JUN 7  3 41 PM '94

RALPH
BY B.
          DEPUTY
AT TOPEKA, KS.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

MARK S. GIETZEN and
DIANA LEA CONNER,

      Plaintiffs,

      Vs.                        Case No. 93-4195-SAC

MILDRED MCMILLON,
KATHLEEN WHITE,
PAUL D. ADAMS, M.D.,
CONNIE HUBBELL,
I.B. "SONNY" RUNDELL,
W.W. "BILL" MUSICK,
WANDA MORRISON,
MICHAEL D. GRAGERT
MANDY SPECHT,
ELIZABETH BAKER,
acting in their official
capacities as members of the
Kansas State Board of Education, and
LEE DROEGEMUELLER, acting in his
official capacity as the
Commissioner of Education for the
State of Kansas,

      Defendants.

MEMORANDUM AND ORDER

On September 3, 1993, the plaintiffs commenced this action alleging that the manner in which vacancies on the Kansas State Board of Education (KSBE)[1] are filled

---

[1] The KSBE is a constitutional body which is charged with the general supervision of public education in the State of Kansas. Kan. Const. art 6, § 2. The KSBE meets monthly.

violates the Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution because the
KSBE exercises general governmental powers which affect the
lives of all of the citizens of Kansas, but replacements to
fill KSBE vacancies are selected by a narrowly limited
voting process. Specifically, the plaintiffs challenge
K.S.A. 25-3902a, arguing that the selection process it
prescribes violates the one person, one vote standard
established and required by the Equal Protection Clause of
the Fourteenth Amendment. The plaintiffs seek an
injunction prohibiting the KSBE and the Commissioner of
Education from filling future vacancies in the manner
currently prescribed under Kansas statutes. The plaintiffs
also seek an order enjoining the KSBE and the Commissioner
of Education from allowing any member of the KSBE selected
through the vacancy replacement process to serve on the
KSBE.

In their answer, the defendants, *inter alia*, deny
that K.S.A. 25-3902a is unconstitutional.

This case comes before the court upon cross-
motions for summary judgment. The facts are undisputed.
The motions for summary judgment present the single issue
of whether K.S.A. 25-3902a is unconstitutional. K.S.A. 25-
3902a provides in pertinent part:

> **Procedure for filling vacancy in state board of
> education; district convention; appointment by
> governor.** (a) When a vacancy occurs in the

office of member of the state board of education, the county chairperson designated in subsection (b), (c) or (d), within 10 days of receipt of notice that a vacancy has occurred or will occur shall call a district convention for the purpose of electing a person to be appointed by the governor to fill the vacancy. Such person shall be an elector of the same political party as that of the board member vacating such position and shall reside in the board member district corresponding to such board member position....

(b) If the board member district lies within a single county, the county chairperson of such county shall call a convention of all precinct committeemen and committeewomen of the party of the precincts in such district in the manner provided by subsections (b) and (d) of K.S.A. 25-3902 and amendments thereto, and such convention shall be conducted as provided in subsection (e).

(c) If all or part of more than one and less than five counties lie within the board member district, the county chairperson of the most populous such county shall call a convention of all precinct committeemen and committeewomen of the party of the precincts in such district in the manner provided by subsections (c) and (d) of K.S.A. 25-3902 and amendments thereto, and such convention shall be conducted as provided in subsection (e).

(d) If all or part of five or more counties lie within the board member district, the county chairperson of the most populous such county shall call a convention of all county chairpersons and vice-chairpersons of the party of the counties in such district. Such county chairperson shall call the convention by mailing a notice to each such county chairperson and vice-chairperson, at least seven days before the date of the convention. Such notice shall state: (1) The place where the convention is to be held; (2) the time when the convention will convene; and (3) the purpose for which the convention is to be held, and such convention shall be conducted as provided in subsection (e).

(e) At the time and place fixed for holding the convention, the county chairperson who called the convention shall act as temporary chairperson and

3

shall call the convention to order. One-third of
the eligible members of the convention shall
constitute a quorum for such election. In the
event a quorum is not present at the time and
place that such convention is called, the members
present shall adjourn the convention to a day and
time certain, which shall be not later than 30
days after adjournment of such convention, and
provide for notification of the time and place of
such adjourned convention to be given to the
eligible members not present. The convention
shall proceed to organize by electing a permanent
chairperson and such other officers as necessary.
After the convention is organized, it shall
proceed to elect a person to be appointed by the
governor to fill the vacancy. ...the person
elected shall be the one who shall receive the
majority of all the votes cast.... Each county
chairperson and vice-chairperson of the party of
the counties in such district shall be entitled
to vote....

(f) After a person has been elected to be
appointed to fill a vacancy in the office of
member of the state board of education, the
chairperson or vice-chairperson of the convention
shall execute a certificate, under oath, stating
that such person has been duly elected to be
appointed to fill such vacancy and shall transmit
such certificate to the governor. Thereupon, and
not later than seven days after such certificate
is received in the office of the governor, the
governor, or in the governor's absence the
lieutenant governor, shall fill such vacancy by
appointing to the office of member of the state
board of education the person so elected....

A person shall be elected to be appointed to
fill a vacancy in the office of member of the
state board of education within 60 days after
such vacancy occurs....

Based upon the uncontroverted facts and applicable law, the court concludes that K.S.A. 29-3902a is constitutional.

### Uncontroverted Facts[2]

---

[2] Many of the facts asserted by both the plaintiffs and the defendants are not supported by citation to any of the materials upon which a motion for summary judgment may

Mark S. Gietzen is Chairman and Diana Lea Conner is Vice-Chairman of the Sedgwick County, Kansas, Republican Party. Sedgwick County is one of six counties in the Kansas State Board of Education District Ten.[3] Therefore

---

be based. *See* Fed. R. Civ. P. 56. However, in light of the fact that neither the plaintiffs nor the defendants dispute any of the factual assertions found in the opposing sides' briefs, the court accepts those facts for purposes of deciding these motions. In essence, although there is no formal agreement of stipulated facts, in light of the absence of any factual controversy, the court has treated the case as being tacitly submitted on stipulated facts.

If the court's conclusion is not correct as to the uncontroverted facts, the parties shall bring the disputed facts to the attention of the court within 10 days from the date of this order.

[3] According to the plaintiffs' brief, the Tenth KSBE District is comprised of six counties:

| County | Population |
|---|---|
| Butler | 50,580 |
| Conley | 36,915 |
| Elk | 3,327 |
| Greenwood | 7,847 |
| Portion of Sedgwick | 100,000 (estimated) |
| Sumner | 25,841 |

According to the plaintiffs' brief, the number of registered voters in each county of the Tenth District is as follows:

| County | Registered Voters |
|---|---|
| Butler | 28,809 |
| Conley | 18,668 |
| Elk | 2,061 |
| Greenwood | 4,827 |
| Portion of Sedgwick | 67,770 |
| Sumner | 13,672 |

Plaintiffs' Revised Memorandum in Support of Motion for Summary Judgment (Dk. 8) at 4-5.

5

K.S.A. 25-3902a(a) and (d) apply in the event of a vacancy from the Tenth District.

Dr. Gwen Nelson, who had been elected to the State Board of Education from the Tenth District in a regular election, passed away on July 12, 1993. Pursuant to K.S.A. 25-3902a(a) and (d) Gietzen called a convention of the Republican Party Chairs from the six counties within the Tenth District in order to select a replacement. Elizabeth Baker was selected by the convention to fill the vacancy created by Dr. Nelson's death. Baker will not serve Dr. Nelson's remaining term but only until the second Monday in January, 1995. At that time, the candidate elected by the voters in the Tenth District in the November, 1994, general election will take office.

Of the ten KSBE districts, two (2 & 8) are contained within a single county, two (1 & 3) are contained in multiple, but less than five counties and the remaining six (4, 5, 6, 7, 9 & 10) are in multiple (5 or more) counties. K.S.A. §§ 4-502 through 4-513.

The ten KSBE districts were reapportioned according to Senate districts by the 1992 Legislature. 1992 Kan. Sess. L. ch. 238. The state representative and senatorial district reapportionment, House Bill No. 3083, was determined to be valid by the Kansas Supreme Court. *See In re House Bill No. 3083*, 251 Kan. 597, 836 P.2d 574 (1992).

During the 1975 legislative session, HB 2280

amended Kansas law relating to <u>vacancies</u> in elective offices. 1975 Kan. Sess. Laws ch. 216, 217. The purpose for the change was to address problems in selecting persons to fill vacancies in multiple county districts. *See* Minutes of Senate Committee on Elections, March 20, 1975. The specific problem with which the legislature was concerned was the difficulty in obtaining quorums in geographically larger districts. Where a quorum cannot be achieved, a vacancy cannot be filled promptly. *See* Minutes of the Senate Committee on Elections, March 20, 1975.

Although the bill had originally proposed to make all districts containing more than one county subject to what is now K.S.A. 25-3902a(d), the Senate Committee amended the bill to apply this provision only if the election district was contained in five or more counties. *See* Minutes of the Senate Committee on Elections, March 20, 1975. The House concurred with the Senate amendments and the governor signed HB 2280 into law. 1975 House Journal 556, 671.[4]

### Arguments of the Parties

The plaintiffs contend that K.S.A. 25-3902a violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it

---

[4] Amendments to this law passed during the 1990 legislative session did not affect the method of selecting persons to fill vacancies. *See* 1990 Kan. Sess. Laws ch. 130, § 5.

7

fails to comport with the one person, one vote rule. The plaintiffs, citing several Supreme Court cases, contend that because KSBE is an elected governmental body, its membership must be selected in a manner which comports with the one person, one vote rule. The plaintiffs essentially concede that the manner in which KSBE members are initially selected comports with the one person, one vote rule, but argue that the manner in which replacements are selected under K.S.A. 25-3902a(d) violates the Equal Protection Clause. The plaintiffs argue that the manner under which vacancies are filled under K.S.A. 25-3902a(d) dilutes the vote of those persons living in the most populated counties and therefore violates the Equal Protection Clause.[5]

The defendants respond, arguing that the one person, one vote principle does not apply to interim replacements filling vacancies until the next general election. Specifically, the defendants contend that *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982), and its progeny mandate a finding that K.S.A. 25-3902a is constitutional. In short, the defendants contend that under *Rodriguez*, states are given great deference in

---

[5] In contrast, the plaintiffs concede that K.S.A. 25-3902a(b) (which concerns filling a board member vacancy in a district which lies within a single county) comports with the one person, one vote rule, "as the precinct committeepersons theoretically represent proportionate districts comprised of relatively equal numbers of registered voters."

determining a manner is selecting persons to fill vacancies and that the scheme Kansas has established for selecting persons to fill vacancies on the KSBE under K.S.A. 25-3902a is a rational scheme.

### The Legal Framework

The Supreme Court has "consistently held in a long series of cases, that in situations involving elections, the States are required to insure that each person's vote counts as much, insofar as practicable, as any other person's." *Hadley v. Junior College District*, 397 U.S. 50, 54 (1970) (footnote collecting cases omitted).

> [A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

397 U.S. at 56; *see Reynolds v. Sims*, 377 U.S. 533, 567-568 (1964). However, the Supreme Court has noted that "the Constitution 'does not confer the right of suffrage upon any one,' *Minro v. Happersett*, 21 Wall 162, 178, 22 L. Ed. 627 (1875), and that the 'right to vote, *per se*, is not a constitutionally protected right,' *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 35 n. 78, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973)." *Rodriguez*, 457 U.S. at 9; *see also Donatelli v.*

9

*Mitchell*, 2 F.3d 508, 513 (3rd Cir. 1993) ("That a law or state action imposes some burden on the right to vote does not make it subject to strict scrutiny.") (citing *Burdick v. Takushi*, ___ U.S. ___, ___, 112 S. Ct. 2059, 2063 (1992)).

In contrast to requirements governing general elections, States are conferred greater discretion in choosing a procedure for filling vacancies. In *Valenti v. Rockefeller*, 292 F. Supp. 851 (S.D.N.Y. 1968), *aff'd*, 393 U.S. 405 (1969), New York voters brought suit seeking a determination that the Seventeenth Amendment to the United States Constitution[6] required that the Senate vacancy created by the death of Senator Robert F. Kennedy, on June 6, 1968, be filled at the November, 1968 general election. Under the New York law, Senate vacancies arising less than

---

[6] The Seventeenth Amendment provides in pertinent part:

> The Senate of the United States shall be composed of two Senators from each state, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislatures.
>
> When vacancies happen in the representation of any state in the Senate, the executive authority of such state shall issue writs of election to fill such vacancies: Provided, That the legislature of any state may empower the executive thereof to make temporary appointment until the people fill the vacancies by election as the legislature may direct. . . .

U.S. Const. amend. XVII.

60 days before the regular spring primary were to be filled at the next even numbered year. Based upon that law, the interim appointee selected by the Governor of New York to fill the Senate vacancy would serve until the November 1970 election, or approximately 29 months. The voters challenging the law argued that it infringed upon the principle of popular election of Senators declared by the Seventeenth Amendment.

A three-judge court rejected the voters' challenge to the statute, finding their suggestion that the New York statute was contrary to the Seventeenth Amendment to be without merit. According to the court, a "natural reading" of the vacancy provisions of the Seventeenth Amendment "grants to the states some reasonable degree of discretion concerning both the timing of vacancy elections and the procedures to be used in selecting candidates for such elections." 292 F. Supp. at 856. The court concluded that New York's vacancy election procedure furthered substantial state interests, which included, *inter alia*, the state's belief that voter interest and turnout are at a maximum during "even-numbered" years. 292 F. Supp. at 859. The three-judge court's opinion in *Valenti* was affirmed summarily by the Supreme Court.

In *Rodriguez*, the Supreme Court upheld a Puerto Rico statute which authorized filling a vacancy in the Puerto Rico legislature by the political party to which the

11

former member belonged.  In *Rodriguez*, the appellants argued that the process for filling a vacancy in the legislature was defective because it did not provide for a special election to fill the vacancy and because the interim successor was appointed by a political party rather than an elected official.  Although *Rodriguez* did not involve the election of a federal official, the Court analogized the appellants' claims to those raised in *Valenti* under the Seventeenth Amendment.  After considering *Valenti*, the Supreme Court stated "the fact that the Seventeenth Amendment permits a state, if it chooses, to forgo a special election in favor of a temporary appointment to the United States Senate suggests that a state is not constitutionally prohibited from exercising similar latitude with regard to vacancies in its own legislature." 457 U.S. at 11.  The interim appointment procedure adopted by Puerto Rico "serves the legitimate purpose of ensuring that vacancies are filled promptly, without necessity of the expense and inconvenience of a special election.  The Constitution does not preclude this practical and widely accepted means of addressing an infrequent problem." 457 U.S. at 12.

Since the Supreme Court's decision in *Rodriguez*, challenges to statutes prescribing the means of filling vacancies in elected positions have generally been unsuccessful.  *See, e.g., Trinsey v. Com. of Pa.*, 941 F.2d 224 (3rd

12

Cir.) (upholding Pennsylvania's scheme in selecting nominees for Senatorial vacancies), *cert. denied*, 112 S. Ct. 658 (1991); *Lynch v. Illinois State Bd. of Elections*, 682 F.2d 93 (7th Cir. 1982) (upholding Illinois municipal code allowing the filling of vacancies to elected municipal offices by appointment for period of up to 28 months plus 129 days before the next general election); *see also Cintron-Garcia v. Romero-Barcelo*, 671 F.2d 1 (1st Cir. 1982) (decided before *Rodriguez*). In reviewing schemes for filling legislative vacancies, the courts have used a deferential standard in reviewing each state's choice of the manner utilized to fill legislative vacancies. *See Trinsey*, 941 F.2d at 234 ("*Rodriguez* counsels us to apply a more deferential standard of review over a state's choice of the manner in which to fill legislative vacancies."); *Lynch*, 682 F.2d at 96 ("Provided the statute at issue does not restrict access to the electoral process or discriminate among classes of voters or political parties, the method chosen by the state legislature for filing vacancies is entitled to substantial deference.").

## Analysis

The plaintiffs have not directed the court's attention to any case law concluding that a statute similar to K.S.A. 25-3902a is unconstitutional. Although the

13

plaintiffs urge the court to apply strict scrutiny[7] to the Kansas statute, the court is not convinced that the statute must survive heightened scrutiny. The plaintiffs' argument that *Rodriguez* is inapplicable to the case at bar ignores the plain holding of that case. In *Rodriguez*, the Supreme Court upheld, under a rational basis test, a statute that provided for the filling of a vacancy *by the political party to which the former member belonged*. See *Rodriguez*, 457 U.S. at 12 ("Puerto Rico's appointment mechanism is not rendered

---

[7] Under the "strict scrutiny" test,

> a challenged state action will be upheld only if it advances a compelling state interest and is narrowly tailored to meet that interest. Strict scrutiny has generally been applied to two types of equal protection claims: (1) where the challenged action or legislation involves a "suspect" classification, i.e. a classification based on race, alienage, or national origin, *see, e.g. Graham v. Richardson*, 403 U.S. 365, 372, 91 S. Ct. 1848, 1852, 29 L. Ed. 2d 534 (1971); *Korematsu v. United States*, 323 U.S. 214, 216, 65 S. Ct. 193, 194, 89 L. Ed. 194 (1944); and (2) where the challenged action infringes on fundamental constitutional rights, such as the right to travel or rights protected by the First Amendment, *see, e.g., Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 101, 92 S. Ct. 2286, 2293, 33 L. Ed. 2d 212 (1972). Strict scrutiny is applied in such cases because classifications that are based on race or that infringe on fundamental constitutional rights, are presumptively invalid and will not often be justified by a legitimate state interest.

*Donatelli v. Mitchell*, 2 F.3d 508, 513 (3rd Cir. 1993).

The plaintiffs do not argue that K.S.A. 25-3902a involves a suspect classification.

14

constitutionally defective by virtue of the fact that the
interim appointment power is given to the political party
with which the previous incumbent was affiliated. . . .
The Puerto Rico Legislature could reasonably conclude that
appointment by the previous incumbent's political party
would more fairly reflect the will of the voters than
appointment by the Governor or some other elected
official."). In light of the fact that the plaintiffs do
not suggest that the Kansas statute prescribing the
procedure for filling vacancies on the KSBE involves a
suspect class, it is difficult to understand why the scheme
chosen by Kansas to fill such vacancies is subject to
heightened scrutiny. Simply put, states are entitled to
deference in fashioning schemes to fill unexpected
vacancies in governmental positions.

The court concludes that K.S.A. 25-3902a survives
the rational basis test. Under the rational basis test, "a
statutory classification that neither proceeds along
suspect lines nor infringes fundamental constitutional
rights must be upheld against equal protection challenge if
there is any reasonably conceivable state of facts that
could provide a rational basis for the classification." As
articulated in the legislative history of the statute,
K.S.A. 25-3902a clearly has a rational basis. Moreover,
the statute apparently serves other rational purposes
including expediency and economy in the filling of

15

unexpected vacancies on the KSBE. The fact that viable, alternative means of selecting replacements to fill vacancies exist does not vitiate this conclusion.

In summary, the court concludes that K.S.A. 25-3902a does not violate the Equal Protection Clause of the Fourteenth Amendment.

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment (Dk. 6) is denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Dk. 9) is granted.

Dated this 7th day of June, 1994, Topeka, Kansas.

Sam A. Crow, U.S. District Judge